## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| GARY A. HILL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:12-cv-01126-TWP-DML ) |
| CAROLYN W. COLVIN Acting Commissioner of Social Security, | ) ) ) |
| Defendant. | ) ) |

### ENTRY ON JUDICIAL REVIEW

Plaintiff, Gary A. Hill ("Mr. Hill), requests judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

### I. BACKGROUND

**A.  Procedural History**

On August 11, 2008, Mr. Hill filed an application for SSI, alleging a disability onset date of December 31, 1999. Mr. Hill's application was denied initially on November 10, 2008, and upon reconsideration on May 1, 2009. Thereafter, Mr. Hill filed a request for a hearing, and a video hearing was held before Administrative Law Judge John K. Kraybill ("the ALJ") on April 18, 2011. Mr. Hill was represented by counsel at the hearing. On May 10, 2011, the ALJ denied Mr. Hill's application. On July 17, 2012, the Appeals Council denied Mr. Hill's request for review of the ALJ's decision, making it the final decision of the Commissioner for purposes of judicial review. Mr. Hill filed this civil action, pursuant to 42 U.S.C. § 405(g), for review of the ALJ's decision.

**B.      Factual Background**

At the time of the ALJ's decision, Mr. Hill was 48 years old and had completed a high school education. He alleges the following impairments: a learning disability and a bad left foot due to a car accident. Prior to the alleged 1999 onset date of his disability, Mr. Hill had past relevant work experience as a carpenter's assistant, cook, dishwasher/food preparer and laborer. Since the alleged onset date of his disability, Mr. Hill has worked as an assembler, cook, and laborer.

As a child, Mr. Hill was run over by a car causing injuries to his left foot. He underwent surgery to repair the injuries, but he continues to have problems with the foot. Mr. Hill asserts that the problems with his foot became worse in the four to five years preceding his claim, and the pain is constant and exacerbated by standing, walking, and climbing stairs. Mr. Hill does not have a primary care physician. In order to alleviate his pain, Mr. Hill soaked his foot and took over-the-counter pain medication (namely Excedrin). He would also elevate his foot to a height about the level of his head in order to alleviate swelling and numbness.

On September 10, 2008, Mr. Hill received a psychological evaluation from state consultative examiner Nancy A.M. Ingwell, Ph.D. ("Dr. Ingwell"). During the examination, Mr. Hill reported that he suffered from depression, post-traumatic stress disorder ("PTSD"), and claustrophobia. Mr. Hill reported that his daily activities included dressing and bathing twice daily, watching television, cooking bacon and eggs, watching four to five hours of television, shopping, and cleaning, but he does not read, do laundry or attend church. Dr. Ingwell administered the Weschsler Adult Intelligence Scale-Third Edition ("WAIS-III") on which Mr. Hill received a verbal IQ score of 60, a performance IQ score of 56, and a full scale IQ score of 54. Dr. Ingwell concluded that Mr. Hill's scores were extremely low and fell within the range of

mild mental retardation. Dr. Ingwell assigned Mr. Hill a Global Assessment of Functioning ("GAF") score of 55 and stated that the GAF score indicated serious symptoms or limitations.

On September 23, 2008, Mr. Hill received a physical examination by state consultative examiner, Dr. Gina Rocillo ("Dr. Rocillo"). During the examination Mr. Hill reported having left hip problems from an accident and a learning disability. Mr. Hill also reported having pain in his left foot from an accident when he was 7 years old. Dr. Rocillo's physical examination of Mr. Hill resulted in clinical impressions of left foot pain and limited range of motion. Although Mr. Hill could not stand on his left heel or toes, Dr. Rocillo concluded that this did not seem to affect Mr. Hill's daily activities. Dr. Rocillo also noted a mental disorder which seemed to affect Mr. Hill's ability to keep a job.

Mr. Hill also received a Physical Functional Residual Capacity ("RFC") Assessment from Dr. M. Brill ("Dr. Brill"), and a Psychiatric Review and Mental RFC Assessment from Dr. Maura Clark ("Dr. Clark"). Dr. Brill determined that based on the record presented to him, Mr. Hill could occasionally lift or carry up to 50 pounds, frequently lift or carry up to 25 pounds, and stand, walk, and sit (with normal breaks) for up six to eight hours in a workday. Dr. Clark determined that based on the record presented to her, Mr. Hill's GAF score of 55 indicated moderate limitations in adaptive functioning. Dr. Clark further determined that Mr. Hill's WAIS-III score was inconsistent with his work history and daily functioning, causing Dr. Clark to believe Mr. Hill possibly did not give his best efforts on the IQ assessment. Additional facts will be addressed below as necessary.

## II. DISABILITY AND STANDARD OF REVIEW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis.  At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors.  20 C.F.R. §416.920(a)(4)(i).  At step two, if the claimant does not have "severe" impairment (i.e. one that significantly limits his ability to perform basic work activities) that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii).  At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled.  20 C.F.R. § 416.920(a)(4)(iii).  In order to determine steps four and five, the ALJ must determine the claimant's RFC, which is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 4040.1545(a)(1); SSR 96-8p).  At step four, if the claimant is able to perform his past work, he is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  At step five, if the claimant can perform any other work in the national economy, he is not disabled.  20 C.F.R. § 416.920(a)(4)(v).  When applying this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step. *Zuraawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456,462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

In reaching his ultimate decision that Mr. Hill was not under a disability as defined in the Act since July 30, 2008, the ALJ found the following: At step one, the ALJ found Mr. Hill had engaged in substantial gainful activity since July 20, 2008, the application date. Although Mr. Hill had engaged in substantial gainful activity, the ALJ continued his analysis and found at step two, Mr. Hill had residual foot and ankle pain from a motor vehicle accident and mild mental retardation, impairments that caused more than a minimal impact on Mr. Hill's ability to perform

work-related activities. At step three, the ALJ found Mr. Hill did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Prior to steps four and five, the ALJ determined that Mr. Hill had a residual functional capacity to perform medium work as defined in 20 C.F.R § 416.967(c), except that Mr. Hill could lift/carry up to 60 pounds, stand two to three hours, and walk two blocks.  The ALJ concluded Mr. Hill should be limited to unskilled work involving only simple, routine and repetitive tasks.  At step four, the ALJ found Mr. Hill was unable to perform any past relevant work.  At step five, the ALJ found that considering Mr. Hill's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Mr. Hill could perform.

## IV.  DISCUSSION

Mr. Hill raises three issues in his appeal that he claims constitute reversible error.  First, he argues the ALJ erred at step three when he determined Mr. Hill's combined impairments did not meet or medically equal listing 12.05(c). Next, he argues the ALJ's credibility determination was patently erroneous because it was contrary to Social Security Ruling 96-7p.  Finally, Mr. Hill argues the ALJ failed to account for his deficiencies in concentration, persistence, and pace and failed to consider the Vocational Expert's ("VE") testimony.

**A.       Mr. Hill's claim failed at step one.**

At step one, if the claimant is engaged in substantial gainful activity, he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i).  Substantial work activity is work that involves doing significant physical and mental activities.  20 C.F.R. § 404.1572(a).  "[W]ork may be substantial even if it is done on a part-time basis or if [claimant] does less, gets paid less, or has less responsibility than when [he] worked before."  *Id*.  Gainful

work activity is work that is done for pay or profit, whether or not profit is realized. 20 C.F.R. § 404.1572(b). The ALJ determined at step one that Mr. Hill was involved in substantial gainful activity since the application date of July 20, 2008. During the hearing, Mr. Hill testified to working as a laborer at CRG Residential in 2009 and 2010, until he was laid off. Mr. Hill testified that his duties included lifting 50-60 pounds and he worked a maximum of 37 hours per week for more than a year. At the time of his hearing, Mr. Hill was still collecting unemployment. The ALJ was not required to perform any further analysis because the Commissioner's analysis is sequential and if the claim fails at one step, there is no need for further evaluation of the remaining steps. *See* 20 C.F.R. § 416.920(a)(4).

Although the ALJ could have concluded his analysis at step one, he continued his evaluation of Mr. Hill's claim through step five. Therefore, the Court will address the remaining issues of Mr. Hill's appeal.

**B.    The ALJ's decision that Mr. Hill had no impairment or combination of impairments that met or medically equaled § 12.05 (c) was supported by substantial evidence.**

"Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon*, 270 F.3d at 1176. In reaching his decision, the ALJ accorded significant weight to Dr. Kathleen O'Brien ("Dr. O'Brien"), Independent Medical Expert, and Dr. Clark. The decision of both doctors was that Mr. Hill retained the mental functional capacity to perform simple, routine, and repetitive tasks on a sustained basis. Drs. O'Brien and Clark concurred that Mr. Hill's daily functioning and work history was inconsistent with the results of the WAIS-III score administered by Dr. Ingwell, and that the WAIS-III scores were likely not a valid representation of Mr. Hill's intellectual functioning. The ALJ relied on the explanation of Dr. Clark, pointing to evidence in the record that Mr. Hill was capable of playing cards and board games, watching television and movies, cooking meals, doing laundry,

and even holding a driver's license, which indicated that he did not function in as limited a capacity as his scores would suggest. R. at 45.

Mr. Hill argues that the ALJ erroneously determined that his impairment was not onset before age 22 and that his work history is not evidence of his functional abilities since people with lower IQs can sometimes maintain a job. If it is determined that the impairment was not onset before age 22, the Mr. Hill cannot meet the requirements of §12.05(c). The court can rely on longitudinal history and evidence of current functioning to demonstrate that the impairment existed before the end of the developmental period. *Id. See* 65 Fed. Reg. 50746, 50772 (August 20, 2000) (Commissioner's comment). Unfortunately, Mr. Hill's medical record for consideration is limited. He had no primary care physician so the only longitudinal evidence he could offer was that he was in special education classes during high school. The ALJ considered that evidence, but also considered the testimony of Dr. O'Brien when she explained that participation in special education classes is not always because of cognitive disorders, but can be for emotional and behavioral disorders as well. Mr. Hill's school record does not indicate why he was enrolled in special education classes. Ultimately, the ALJ gave the most weight to Dr. O'Brien's testimony, accepting that based on Mr. Hill's current functional abilities, including past work history, and his longitudinal history, he did not meet or medically equal §12.05(c). The Court finds that the ALJ's decision was supported by substantial evidence and there is no reversible error at step three.

Additionally, even if the ALJ's step three analysis was somehow erroneous, Mr. Hill's claim failed at step one, which would have resulted in harmless error at step three. Harmless error occurs when it can be predicted with great confidence that on remand the ALJ would ultimately reach the same decision. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011).

Here, because Mr. Hill's claim failed at step one, the ALJ could have stopped his evaluation at that point resulting in the same determination, denial of Mr. Hill's SSI claim. The Court finds there was no error at step three; however, had the step three analysis been erroneous, it would have amounted to harmless error because Mr. Hill's claim failed at step one.

**C.      The ALJ's decision that Mr. Hill's allegations were not credible is supported by substantial evidence.**

Mr. Hill argues that the ALJ's credibility determination is contrary to the evidence and Social Security Ruling 96-7p. SSR 96-7p, states:

> When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects . . . the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

*See Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7P (S.S.A. July 2, 1996).

Additionally, the ALJ must evaluate credibility in light of (i) daily activities, (ii) the location, frequency, and duration of pain, (iii) precipitating and aggravating factors, (iv) the effects of medication, (v) treatment, (vi) other measures used to relieve the pain, and (vii) other factors concerning functional limitations. 20 C.F.R. § 404.1529(c)(3). Credibility is largely a factual determination, and because the ALJ is in the best position to observe witnesses, the court will not usually upset credibility determinations on appeal as long as some support in the record is found and the decision is not patently wrong. *Herron*, 19 F.3d at 335. Furthermore, the use of boilerplate language will not "undermine or discredit" an ALJ's conclusion if he identifies

9

evidence in the record to justify his credibility determination. *Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013).

The ALJ's credibility determination was not patently wrong. The ALJ determined Mr. Hill's medically determinable impairment could reasonably be expected to cause the alleged symptoms. However, the ALJ found Mr. Hill's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible. Mr. Hill argues the ALJ's credibility determination was wrong because he used boilerplate language. Even so, the ALJ's use of boilerplate language does not automatically make the decision reversible. Consistent with the Seventh Circuit's decision in *Pepper,* the ALJ was able to point to specific evidence in the record to support his decision, even though he used boilerplate language. 712 F.3d at 367-68. Most importantly, the ALJ relied on Mr. Hill's own conflicting testimony. R. at 47. During questioning at the hearing, Mr. Hill testified that he could stand 15-30 minutes, walk about a block, and sit for about two to three minutes before his foot would stiffen. He also testified that he could lift between 10-15 pounds. Earlier in his testimony, Mr. Hill testified he could lift up to 60 pounds. Mr. Hill later gave conflicting testimony when he said he could sit and stand for about 15-20 minutes. R. at 47; 64. Additionally, The ALJ cited to the medical examination performed by Dr. Rocillo noting that Mr. Hill's posture and gait were normal and he has no neurological impairments. The ALJ also noted that Mr. Hill was not receiving mental health treatment nor was he on psychotropic medications. R. at 48; 266.

The ALJ's opinion indicates that he considered the entire record when making his credibility decision. The Court finds that the ALJ provided adequate support for his conclusions; therefore, the ALJ's credibility determination is not patently wrong.

**D.     The ALJ's decision that Mr. Hill was not disabled because he could perform some jobs is supported by substantial evidence.**

A finding by the ALJ at step five was not necessary. As stated earlier, Mr. Hill's failure to satisfy step one because he was involved in substantial and gainful activity was sufficient to deny his claim for benefits. However, the Court finds that the ALJ's decision at step five was correct as well. Mr. Hill argues the ALJ's work limitations of unskilled work involving only simple, routine and repetitive tasks did not address the impact of his mental limitations because the ALJ failed to account for his deficiencies in concentration, persistence, and pace. The ALJ gave significant weight to Dr. Clark's opinion and found Mr. Hill to have moderate difficulties with concentration, persistence, and pace. The ALJ also based his decision on testimony by Mr. Hill stating that he has problems paying attention, maintaining concentration, and completing tasks even though he can play cards and board games, cook meals, and watch television for four to five hours daily.

Mr. Hill also argues that the ALJ's decision omits consideration of the VE's testimony at the hearing, requiring the case to be remanded. During the hearing, two hypotheticals were presented to the VE, one by Mr. Hill's attorney, the other by the ALJ. Mr. Hill's attorney asked about the availability of jobs considering Mr. Hill's impairments as he perceived them. The ALJ asked about the availability of jobs specifying limitations he perceived to be consistent with Mr. Hill's RFC. Courts have held that as long as the ALJ's RFC finding is supported by substantial evidence, and there is no inconsistency between the RFC and the hypothetical question, remand is not mandated under *O'Conner-Spinner v. Astrue*, 627 F.3d 614, 619-21 (7th Cir. 2010). *See Packham v. Astrue*, 762 F. Supp. 2d 1094, 1105 (N.D. Ill. 2011); *Herrold v. Astrue*, No. 2:10-CV-489-JD, 2012 WL 967354, at *27 (N.D. Ind., Mar. 21, 2012); *Evans v. Astrue*, No. 3:10-CV-432-JD, 2012 WL 951489, at *24 (N.D. Ind., Mar. 20, 2012); *Allbritten v. Astrue*, No. 2:11-

CV-116, 2012 WL 243566, at *7 (N.D., Ind., Jan. 25, 2012). The ALJ based his RFC findings on the consultative examination by Dr. Rocillo. During the examination, Mr. Hill reported to Dr. Rocillo that he could walk two blocks, stand two three hours, climb one to two flights of stairs, and lift 60 pounds in his right and left arms. R. at 48; 264. The ALJ also notes that he did not give weight to Dr. Brill's determination that Mr. Hill could stand and walk for 6 hours in an 8 hour workday because it was inconsistent with the record. R. at 48. The ALJ's hypothetical asked the VE to consider the exact RFC factors that Mr. Hill reported he could perform, such as the ability to walk two blocks, stand two to three hours at a time and lift up to 60 pounds. R. at 73. Therefore, the ALJ's hypothetical is consistent with the RFC. Accordingly, the Court finds the ALJ's decision that Mr. Hill was not disabled because he could perform some jobs is supported by substantial evidence.

## V.  **CONCLUSION**

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**.

SO ORDERED.

Date: 09/23/2013

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
OFFICE OF THE UNITED STATES ATTORNEY
tom.kieper@usdoj.gov